UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**JAMES MADISON PROJECT**, *et al.*,

          Plaintiffs,

          v.

**OFFICE OF THE DIRECTOR OF
NATIONAL INTELLIGENCE,**

          Defendant.

Case No. 1:22-cv-00674 (TNM)

---

## <u>MEMORANDUM OPINION</u>

Congress enacted the Freedom of Information Act in 1966, heeding the old adage that "[s]unlight is . . . the best of disinfectants." Louis D. Brandeis, *What Publicity Can Do*, HARPER'S WEEKLY, Dec. 20, 1913, at 10. But even Justice Brandeis agreed that rule only reached information to which the public "is fairly entitled." *Id*. at 12. So Congress, taking a similar tack, limited what information the Government must disclose under FOIA. *See* 5 U.S.C. § 552(b). This case is about those limits: Must the Government give Plaintiffs full, unredacted access to an intelligence community report about Havana Syndrome? The answer is no. So the Court will grant the Government's Motions for Summary Judgment.

### I.

The James Madison Project is an organization devoted to "government accountability and the reduction of secrecy." Compl. ¶ 3, ECF No. 1. It, along with Brian Karem—the White House correspondent for Playboy Magazine—sued the Office of the Director of National Intelligence (ODNI) to obtain copies of a report on Havana Syndrome. *See generally id*. ODNI produced a partially redacted copy of the report and pointed to a smorgasbord of agencies responsible for those redactions: itself, the Defense Intelligence Agency, the Central Intelligence

Agency, the Federal Bureau of Investigation, the Army Research Laboratory, and the Air Force Research Lab. *See generally* Decls., ECF Nos. 21-3–21-7, 28-3–28-5.

The report Plaintiffs sought represented "ODNI's intelligence assessment . . . regarding the source of [Havana Syndrome]." Compl. ¶ 6. Havana Syndrome (referred to by the Government as "anomalous health incidents," or "AHIs") is an umbrella term for a collection of symptoms experienced by federal employees over the past several years. Redacted Report at 1, ECF No. 21-4 Ex. D. Its name derives from its early appearance among employees of the U.S. embassy in Havana, Cuba, and it manifests primarily as "a sudden sense of pressure or loud, unpleasant sound" with common symptoms of "pain, nausea, dizziness, and cognitive impairment." *Id*.

The Government turned over the report. *See generally* Redacted Report. But it was heavily redacted. The Government withheld information under FOIA exemptions 1 (relating to classified information), 3 (relating to information exempted from disclosure by statute), 5 (relating to information protected by a legal privilege), 6 (relating to private and personally identifiable information), and 7(A), (C), and (E) (relating to law enforcement investigations and investigatory practices). The redactions were extensive—sometimes shrouding entire pages of the report with a black rectangle. *E.g.*, *id*. at 47–57. So Plaintiffs sued ODNI to obtain an unredacted copy. Compl. at 6.

The Government moved for summary judgment, Mots. for Summ. J. (MSJ), ECF Nos. 21 & 28, and its motions are now ripe. But in January 2024, the Court ordered the Government to supplement its motions. Order for Suppl. Mat'ls., ECF No. 32. The Court found that the Government's declarations were insufficiently specific about which agencies were responsible for which withholdings, so the Court could not be confident that all withholdings were supported

by one or more of the declarations.  *Id*.  After the Court's Order, the Government supplied the

Court with an unredacted copy of the report, correlating each withholding to a particular agency.

The Court can now rule on the Government's motions.

## II.

To obtain summary judgment, the movant (here, the Government) must show that "there

is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  That standard helps implement summary judgment's "core

purpose" of "avoid[ing] the expense of trial where a trial would be a 'useless formality' because

no factfinder could find for the nonmoving party."  *Mass. Coal. for Immigr. Reform v. U.S. Dep't

of Homeland Sec.*, --- F. Supp. 3d ---, 2023 WL 6388815, at *5 (D.D.C. Sept. 30, 2023) (quoting

*Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135–36 (9th Cir. 1975)).  The "vast majority of FOIA

cases"—really, nearly all of them—"can be resolved on summary judgment."  *Brayton v. Off. of

the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"The Freedom of Information Act (FOIA) requires that federal agencies make records

available to the public upon request, unless those records fall within one of nine exemptions."

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 263 (2021).  To invoke one of

those exemptions in court, as the Government seeks to do here, the Government must "prov[e]

the applicability of [the] claimed exemptions."  *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619

(D.C. Cir. 2011).  But that burden is low:  "Ultimately, an agency's justification for invoking a

FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Larson v. Dep't of State*, 565

F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Once the Government has cleared that hurdle,

the burden shifts to the plaintiff.  If a plaintiff wishes to rebut the Government's claimed

exemption and survive summary judgment, he must "come forward with specific facts

demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (cleaned up).

Plaintiffs have abandoned their claims relating to exemptions 5, 6, 7(A), and 7(C). Opp'n at 1, ECF No. 25. So the Court is left only with exemption 1 (the classified information exemption), exemption 3 (the statutory carveout exemption), and exemption 7(E) (the law enforcement techniques and procedures exemption). And there are some special rules for these exemptions. Because courts "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case," *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993) (cleaned up), the Court must "accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record," *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). Indeed, agency affidavits *alone* are enough to require summary judgment when they "describe the justifications for nondisclosure with reasonably specific detail" and "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (citation omitted).

Finally, because each exemption by itself justifies withholding, Plaintiffs' challenge to a given withholding fails if *any one* of the exemptions is valid. *Larson*, 565 F.3d at 862–63. Applying those principles to this case, the Court will grant the Government's motions for summary judgment.

## III.

Plaintiffs challenge three of the Government's asserted FOIA exemptions: 1, 3, and 7(E). That is, the classified information, statutory carveout, and law enforcement investigations

exemptions.  *See* 5 U.S.C. § 552(b)(1), (b)(3), (b)(7)(E).  The Court marches through each in turn.  All are justified.

**A.**

Exemption 1 shields information that has been "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy," provided that it is "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  The Government's lift on this exemption is light.  It need only describe the justification for nondisclosure "with reasonably specific detail," such that the Court can be confident that the documents were properly classified.  *Wolf*, 473 F.3d at 374.  Unless Plaintiffs can show that "the affidavits are deficient" because they are unspecific, conclusory, vague, or sweeping, "the court need inquire no further into their veracity."  *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  None of those deficiencies are present here.

To start, Plaintiffs challenge the sufficiency of only one affidavit: that of Gregory Koch, ODNI's affiant.  *See* Opp'n at 7–13; Koch Decl., ECF No. 21-3.  Because they have not challenged the sufficiency of the other affidavits, any such challenges have been forfeited.  But the Koch Declaration is enough to warrant summary judgment for the Government.

Koch attests, under penalty of perjury, that he is an "original classification authority" for ODNI, which is to say that he "make[s] original classification and declassification decisions for intelligence information up to and including the TOP SECRET level."  Koch Decl. ¶ 3.  He then attests that he personally reviewed all the redacted information and confirmed it is properly classified, consistent with the requirements of Executive Order 13526.  *Id*. ¶ 30.  Indeed, he specifically articulates the bases under Executive Order 13526 justifying the classification—for example, that some information pertains to "intelligence activities" or "intelligence sources and

methods." *Id*. ¶ 31.  And he attests that the disclosure of such information is reasonably likely to harm national security—he even explains how.  *Id*. ¶ 32.  That is all that is needed.

Plaintiffs disagree.  They want Koch to "elaborate or provide . . . further clarity" on these claims.  Opp'n at 9.  They do not clearly explain why such "further clarity" is needed.  But, charitably construed, they appear to be raising a claim that the Koch Declaration is "conclusory" under *Hayden*.  Not so.

The Koch Declaration is as specific as it needs to be.  It identifies particular bases for the classification of the information at issue.  Koch Decl. ¶ 31.  And it specifies why that information would likely harm national security if divulged.  *Id*. ¶ 32.  True enough, Koch does not say what the classified material is or provide a factual synopsis.  But he does not need to.  *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ("[L]ittle proof or explanation is required beyond a plausible assertion that information is properly classified.").  In fact, requiring what Plaintiffs ask for would defeat the whole point of exemption 1:  Forcing Koch to detail the contents of the withholdings and why they were classified would render their classification futile.  Perhaps recognizing the difficulty of claiming otherwise, Plaintiffs pivot.

They next argue that the affidavit is insufficient because of a purported mismatch.  They say that, because Koch attests there is classified information in places they find odd, his affidavit is untrustworthy.  Opp'n at 9–10.  For example, they ask why classified information would appear in a panelist's biography.  *Id*.  But the panelist biographies were not withheld under exemption 1—they were withheld under exemption 3 and exemption 6, which Plaintiffs do not challenge.  *See* Redacted Report at C1–C13.  And, in any event, the panelists include members of the intelligence community.  It is unsurprising that their biographies would reference classified

material or their previous classified work.  So the oddity Plaintiffs point to is only skin-deep.[1]

The other purported oddities also have reasonable explanations:  It stands to reason that

recommendations for the national security community would feature extensive amounts of

classified information.  *Contra* Opp'n at 10.

Ultimately, Plaintiffs challenge only one affidavit when it comes to exemption 1—

Koch's.  And that challenge fails.  Because their only argument on this exemption is a non-

starter, the Court will grant summary judgment to the Government on its exemption 1

withholdings.[2]  In the end, the Government has put forward multiple facially sufficient affidavits

to justify its withholdings, while Plaintiffs have offered nothing to controvert those affidavits or

suggest bad faith.  *Wolf*, 473 F.3d at 374.  Where, as here, the Government offers uncontroverted

evidence in support of its withholdings, "something, even a modest [showing], outweighs

nothing every time."  *Nat'l Ass'n of Ret. Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir.

1989).[3]

---

[1] Separately, the names of members of the intelligence community are properly withheld under exemption 3, *infra* Part III.B, and providing their biographies would likely give away their identities, circumventing the exemption 3 withholding.

[2] The Government has now filed with the Court an unredacted copy of the report, *ex parte* and under seal.  In the alternative to the reasons given above, the Court has independently reviewed that report and concludes that the affidavits' representations about the propriety of all three exemptions' withholdings appear justified.

[3] Although the Court concludes that the original declarations, standing alone, are enough to support the exemptions, the Government has provided supplemental declarations in support of its withholdings.  Those declarations are "extra icing on a cake already frosted."  *Yates v. United States*, 574 U.S. 528, 557 (2015) (Kagan, J., dissenting).  If the Government's showing was not enough before, it certainly is now.

**B.**

Exemption 3 carves out materials that are "specifically exempted from disclosure by statute," provided the statute meets certain criteria.  5 U.S.C. § 552(b)(3).  The Government has identified the National Security Act and the Central Intelligence Agency Act as two statutes that justify its exemption 3 withholdings.  Mot. for Summ. J. (First Mot.) at 17–22, ECF No. 21. Plaintiffs agree that these statutes, "in and of themselves, qualify as withholding statutes." Opp'n at 11.  So the only question for the Court is whether the withheld material falls within the statutes' coverage.  *Morley*, 508 F.3d at 1126.

Both the Supreme Court and the D.C. Circuit have admonished district courts not to be chary in their reading of exemption 3.  Although it is not a categorical exemption from disclosure for intelligence agencies, *Phillippi v. CIA*, 546 F.2d 1009, 1015 n.14 (D.C. Cir. 1976), neither should courts be insensitive to the significant national security harms associated with improper disclosure, *CIA v. Sims*, 471 U.S. 159, 174–76 (1985).  Thus, while a blanket statement that disclosure of information would "jeopardize the agency's national security functions" is too vague to pass muster, *Church of Scientology of Calif., Inc. v. Turner*, 662 F.2d 784, 785 (D.C. Cir. 1980) (cleaned up), unspecific statements about expected resultant harms—like that disclosure would "reveal cooperation with and perhaps the identity of a foreign intelligence service or a covert intelligence source"—are enough, *id*. at 786.

The Government's declarations met this burden.  The Defense Intelligence Agency's declaration, for instance, explained that revealing the withheld information would "reveal intelligence sources and methods" in a way that "would allow adversaries to employ countermeasures, thus reducing the effectiveness of the sources and methods as intelligence collection tools."  Cross-Davison Decl. ¶ 23, ECF No. 21-5.  Similarly, the CIA declaration

made clear that revealing the withheld information would "expose the identities of CIA personnel, which could subject them to harassment or unwanted contact."  Williams Decl. ¶ 28, ECF No. 21-6.  These explanations are representative of those offered by each agency here.[4]

In response, Plaintiffs argue that the Government's assertions of harm are "self-serving and conclusory."  Opp'n at 11.  Not so.  The Circuit drew a clear line in *Church of Scientology* to separate impermissibly conclusory assertions from sufficiently detailed ones.  *Church of Scientology*, 662 F.2d at 785–86.  These declarations—though circumspect—fall on the latter side of that line.

Plaintiffs' remaining objections largely revolve around the length of the sections to be withheld.  Opp'n at 12.  But that is not the test.  The Government could withhold the entire document if it could show that it all fell within some exemption's remit.[5]  And despite Plaintiffs' contentions, the Government's paragraph-long withholdings bear no resemblance to those discussed in *Phillippi*.  *Id.* at 11.  The Government does not suggest that all information related to CIA activities is protected from disclosure.  *See Phillippi*, 546 F.2d at 1015 n.14.  So Plaintiffs' invocation of the *Phillippi* footnote is simply off base.

Last, Plaintiffs again suggest that it would be odd to find protected information in certain portions of the report.  Why, they ask again, would the biographies of panelists be exempted from disclosure?  Opp'n at 12.  Again, the answer is simple:  The National Security Act bars disclosure of the "names, official titles, salaries, or number of personnel employed" by certain intelligence community agencies.  50 U.S.C. § 3507.  And the panelist biographies may well

---

[4] The Government's explanations of expected harm here go well beyond what was required by statute.  *See* 5 U.S.C. § 552(a)(8)(B).

[5] Of course, the length of the Government's withholdings might separately bear on the segregability analysis, discussed further below.  *Infra* Part III.D.

contain sufficient information to identify the panelists, even without their names.  But, once more, the length or location of the withheld information is not material to whether it is exempted from disclosure, so long as the claimed exemption is supported by a competent agency declaration, as those here were.  Under these circumstances, the Government's exemptions "appear[] logical or plausible," and therefore pass muster.  *ACLU*, 628 F.3d at 619 (internal quotation marks omitted).

Exemptions 1 and 3 both require that a "reasonable balance . . . be struck between the competing congressionally-sanctioned policies of public access to government information, on the one hand, and maintenance of a functioning intelligence-gathering system, on the other." *Church of Scientology*, 662 F.2d at 787.  The Government's representations here strike that balance.  They are detailed enough for the Court to conclude that the withheld information falls within one or more of the FOIA exemptions, without divulging overly detailed information to the public.  Although Plaintiffs may want more, more is not required.

## C.

Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes" that could "disclose techniques and procedures for law enforcement investigations or prosecutions," among other things.  5 U.S.C. § 552(b)(7)(E).  The FBI invoked this exemption to cover various withholdings that would reveal methods for "collection and analysis of information and sensitive investigative techniques used to conduct national security investigations."  First Mot. at 34.  And the Government explained the harms that would result from such disclosure.  Seidel Decl. ¶ 32, ECF No. 21-7.

Plaintiffs concede that exemption 7(E) "sets a low bar" for the Government.  Opp'n at 13.  Yet they argue the Government has failed to meet that bar because it has invoked exemption 7(E)

for the entirety of Appendix J.  *Id*.  Again though, the Government has explained the sensitive

law enforcement information contained within Appendix J and the harm that would result from

its disclosure.  Seidel Decl. ¶¶ 32–33.  So the mere fact that the exempt information covers a

long passage in the report is immaterial.

And it cannot be true, as Plaintiffs suggest, that the FBI must disclose to them the

withheld material to protect that material from disclosure.  Opp'n at 13.  Plaintiffs identify, as

justification sufficient to support invoking exemption 7(E), an FBI declaration in a prior case that

provided "details about procedures used during forensic examination."  *Id*. (citing *Blackwell v.

FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)).  But that level of detail, while sufficient, is unnecessary.

Indeed, under Plaintiffs' theory, exemption 7(E) is curiously self-defeating.  It would require

divulging the exact information the Government seeks to withhold in order to justify the

withholding.  Instead, the Government need only provide the Court enough information for it to

reasonably conclude that the withheld materials do, in fact, pertain to confidential law

enforcement techniques and practices.  Because the Government has detailed how the withheld

information does so, and the harm that would result from its disclosure, the Court finds that the

exemption 7(E) withholding is reasonable.[6]

---

[6] Plaintiffs make no argument about the reasonably foreseeable harm requirement from the FOIA
Improvement Act of 2016.  *See* 5 U.S.C. § 552(a)(8)(A)(i).  But if it had, the Government would
easily satisfy § 552(a)(8)(A)(i).  *Cf. Reporters Comm. for Freedom of the Press v. U.S. Customs
& Border Patrol,* 567 F. Supp. 3d 97, 120 (D.D.C. 2021) (noting foreseeable harm requirement
is more easily met when invoking exemptions for which the risk of harm through disclosure is
self-evident).  Reasonably foreseeable harm is always present when the Government properly
invokes exemption 1, because significant harm from disclosure is a requirement for classification
in the first place.  More, the requirement does not apply to exemption 3.  5 U.S.C.
§ 552(a)(8)(B).  And the Government has explained at length the harms that would result from
disclosure of the 7(E) materials.  *E.g.*, Seidel Decl. ¶ 33.

**D.**

Last, Plaintiffs argue that the Government "has simply failed to present credible evidence that there are no further segregable portions of the released records." Opp'n at 14. They provide no support for this claim, except for the assertion that "[a]ll [the Government] provides is a self-serving sentence that it has determined no further information can be segregated." *Id.* But the Government provided a reasonably detailed statement supporting its claim on non-segregability. Koch certified that he reviewed the record "on a line-by-line and page-by-page basis" and determined that there was "no additional meaningful, non-exempt information that may be reasonably segregated and released" without disclosing exempt information. Koch Decl. ¶ 47.

This is substantively identical to the declaration approved by the D.C. Circuit in *Machado Amadis v. U.S. Department of State*, 971 F.3d 364, 371–72 (D.C. Cir. 2020). Because the Circuit found that declaration sufficient, the Court likewise finds that the Koch Declaration is sufficient here. Koch certified under pain of perjury that he reviewed the report and determined that no further information was segregable. Koch Decl. ¶ 47. And because the Government cannot prove the negative assertion that no other segregable information exists, that type of declaration *must* be sufficient to carry its burden. The Court therefore concludes that the Government has satisfied its burden to show that it has disclosed all non-exempt reasonably segregable information to Plaintiffs.

**IV.**

FOIA is a broad statute designed to grant the public access to the Government's inner workings. But it is not a cudgel to force disclosure of sensitive national security information. Armed with little more than speculation about what the redacted document may say, Plaintiffs invoke FOIA to try to force the intelligence community to divulge secrets they cannot otherwise

obtain.  Then Plaintiffs turn around and say the intelligence community's unwillingness to give

them that information is itself proof that it must.  FOIA does not countenance such a strategy to

outmaneuver its exemptions.  The Government has met its obligations under the statute, so the

Court will grant the Government's Motions for Summary Judgment.  A separate Order will issue

today.


Dated: March 26, 2024                                    _____
                                                        TREVOR N. McFADDEN, U.S.D.J.